# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE M. DEROUCHIE, | ) | CASE NO. 1:18CV00365 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Plaintiff, Darlene M. Derouchie ("Plaintiff" or "Derouchie"), challenges the final

decision of Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security

("Commissioner"), denying her application for Supplemental Security Income ("SSI") under

Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act"). This

Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to

28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is

AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security.

# I.    PROCEDURAL HISTORY

In September 2014, Derouchie filed an application for SSI alleging a disability onset date of January 1, 1999 and claiming she was disabled due to posttraumatic stress disorder, depressive disorder, bipolar disorder, cocaine dependence, and hypertension. (Transcript ("Tr.") at 167, 189.) The applications were denied initially and upon reconsideration, and Derouchie requested a hearing before an administrative law judge ("ALJ"). (Tr. 110, 124, 129.)

On May 27, 2016, an ALJ held a hearing, during which Derouchie, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 29.) On February 23, 2017, the ALJ issued a written decision finding Derouchie was not disabled. (Tr. 12-28.) The ALJ's decision became final on December 21, 2017, when the Appeals Council declined further review. (Tr. 1.)

On February 15, 2018, Derouchie filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14, 15.) Derouchie asserts the following assignment of error:

> (1) The ALJ erred by failing to properly evaluate the opinions of the State agency psychological consultants and further erred by failing to account for all of Plaintiff's work-related limitations in her RFC finding.

(Doc. No. 14 at 2.)

# II.    EVIDENCE

## A.    Personal and Vocational Evidence

Derouchie was born in August 1964 and was fifty one years-old at the time of her administrative hearing, making her a "person closely approaching advanced age" under social

security regulations.  (Tr. 22.)  *See* 20 C.F.R. §416.963(d).  She has a marginal education and is able to communicate in English.  (*Id.*)  She has no past relevant work.  (*Id.*)

**B.  Medical Evidence**[2]

On January 13, 2014, Derouchie visited social worker Jaime Garay, MSW, reporting she had recently been released from prison on December 24, 2013 and was not currently receiving any mental health services.  (Tr. 1279, 1280.)  Social worker Garay provided Derouchie with information on a behavioral health clinic.  (Tr. 1280.)

On August 29, 2014, Derouchie visited psychiatrist Gregory Boehm, M.D., at Recovery Resources.  (Tr. 1584.)  She reported 19 month of sobriety.  (*Id.*)  Derouchie indicated she spent most of her time at home, but enjoyed going to the zoo and the park.  (*Id.*)  She described paranoia, anxiety, compulsive activity, and occasional hallucinations of her past abuser.  (*Id.*)  She denied suicidal ideation.  (*Id.*)  On examination, Derouchie's memory, judgment, and insight were intact.  (Tr. 1585.)  She was attentive and focused.  (*Id.*)  Dr. Boehm noted Derouchie was not currently taking psychotropic medications, but had done well on medication.  (*Id.*)  He diagnosed bipolar disorder and PTSD and prescribed Prozac and Trazadone.  (*Id.*)  Dr. Boehm also assessed a Global Assessment of Functioning ("GAF") score[3] of 50.  (*Id.*)

---

[2]   The Court notes its recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.  The Court further notes the Plaintiff has cited generally to large swaths of evidence in her brief, totaling over 150 pages.  (Doc. No. 14 at 4.)  This does not comply with the Court's Order, which provides the brief "shall cite, by exact and specific transcript page number, the pages relating" to the fact at issue.  (Doc. No. 5 at 3.)  Thus, the Court will discuss only that evidence which has been cited by the parties with specificity, in compliance with this Court's Order.

[3]   The GAF scale reports a clinician's assessment of an individual's overall level of functioning.  An individual's GAF is rated between 0-100, with lower numbers

Derouchie visited therapist Kelly Barrows, LISW, at Recovery Resources on September 11, 2014.  (Tr. 1891.)  She reported increased stress over her living situation and her physical health.  (*Id*.)  She indicated she was planning on contacting her family via social media and assured Ms. Barrows it would not "bring up bad memories" from her abuse.  (*Id*.)

Derouchie returned to Ms. Barrows on September 25, 2014.  (Tr. 1888.)  She indicated a fear of leaving her home due to several nearby murders.  (*Id*.)  She reported her fiancé accompanied her outside the home and she otherwise stayed inside.  (*Id*.)  Derouchie denied any current trauma symptoms.  (*Id*.)

On October 14, 2014, Derouchie visited case manager Megan Surniak, B.A., at Recovery Resources.  Derouchie was "doing good" and had no issues with her sleep.  (Tr. 1884.)  Ms. Surniak observed Derouchie was "making progress."  (*Id*.)

Derouchie returned to Dr. Boehm on November 13, 2014, reporting a recent hospitalization for gastrointestinal problems.  (Tr. 1875.)  She indicated improved depression and "greatly decreased" nightmares and flashbacks.  (*Id*.)  Dr. Boehm noted Derouchie tended to socially isolate herself, but had no hallucinations, intact memory, judgment, and insight, and was attentive and focused.  (Tr. 1876.)  Dr. Boehm concluded Derouchie was "doing well on medication" and had maintained sobriety for nearly two years.  (Tr. 1877.)  He assigned a GAF score of 50.  (*Id*.)

---

indicating more severe mental impairments.  A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational or school functioning.  A recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

Derouchie continued to see therapist Kelly Barrows at Recovery Resources throughout 2015. On January 15, 2015, Derouchie expressed worries about her physical health. (Tr. 1961.) On March 26, 2015, Derouchie's depression had increased, which was contributing to relationship problems. (Tr. 1960.) She denied suicidal ideation. (*Id.*) On May 8, 2015, Derouchie was depressed, but reported improvement with her medication. (Tr. 1958.) On June 25, 2015, Derouchie relayed she had developed problems with her esophagus and digestive tract from past alcohol abuse. (Tr. 1957.) She had maintained sobriety, but had depression over her physical condition. (*Id.*) Derouchie indicated she spent most of her time at home, but enjoyed visiting her grandchild. (*Id.*)

Derouchie visited Kelly Barrows on July 13, 2015 and July 31, 2015, both times reporting increased depression, with no suicidal ideation and continued sobriety. (Tr. 1956, 1954.) On August 19, 2015, Derouchie's depression had improved with a higher dosage of Prozac. (Tr. 1952.) She continued to feel paranoid and reported leaving a festival because of crowds. (*Id.*)

On October 22, 2015, Derouchie visited psychiatrist Anmol Toleni, M.D., at Recovery Resources. (Tr. 1989.) On examination, her concentration and attention were normal, her memory was intact, her thought content was appropriate, and her insight and judgment were fair. (Tr. 1991, 1992.)

On April 14, 2016, Dr. Tolani filled out a "Mental Impairment Questionnaire" prepared by Derouchie's attorney. (Tr. 2030-2032.) He listed her diagnoses as PTSD, cocaine use disorder, major depressive disorder with psychosis, and alcohol use disorder. (Tr. 2030.) He

observed her symptoms were of moderate severity with a fair prognosis. (*Id.*) Dr. Tolani opined

Derouchie was "seriously limited, but not precluded" in her abilities to:

- carry out very short and simple, as well as detailed, instructions;
- maintain attention and concentration for extended periods;
- perform activities within a schedule;
- manage regular attendance and be punctual within customary tolerances;
- sustain an ordinary routine without special supervision;
- work in coordination with or in proximity to others without being distracted by them;
- complete a normal workday and workweek without interruptions from psychologically based symptoms;
- perform at a consistent pace without an unreasonable number and length of rest periods;
- remember locations and work-like procedures;
- understand and remember very short and simple, as well as detailed, instructions;
- interact appropriately with the general public;
- ask simple questions or request assistance;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness;
- respond appropriately to changes in the work setting;
- be aware of normal hazards and take appropriate precautions; and
- set realistic goals or make plans independently of others.

(Tr. 2030, 2032.) Dr. Tolani concluded Derouchie would absent from work five days a month

and off-task 30% of the workday. (Tr. 2032.)

**C.      State Agency Reports**

**1.      Mental Impairments**

On November 6, 2014, state agency physician Karen Terry, Ph.D., reviewed Derouchie's

medical records and completed a Psychiatric Review Technique ("PRT") and Mental Residual

Functional Capacity ("RFC") Assessment. (Tr. 84-85, 86-88.) She concluded Derouchie had (1)

moderate restriction of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, and pace; and (4) no episodes of decompensation. (Tr. 85.) With regard to Derouchie's mental functional limitations, Dr. Terry found Derouchie was moderately limited in her abilities to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or in proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (8) respond appropriately to changes in the work setting. (Tr. 86-88.) She found Derouchie was not significantly limited in her abilities to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (2) sustain an ordinary routine without special supervision; (3) make simple work-related decisions; (4) ask simple questions or request assistance; and (5) be aware of normal hazards and take appropriate precautions. (*Id.*) Dr. Terry found no evidence of limitation in Derouchie's abilities to (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (5) travel in unfamiliar places or use public transportation; and (6) set realistic goals or make plans independently of others. (*Id.*) Dr. Terry explained the basis of her conclusions as follows:

Claimant with [history of] alcohol and crack abuse and poor compliance in regards to treatment efforts and meds. Claimant is likely to have difficulty understanding and remembering complex, multi-step instructions. However, **she demonstrates the ability to understand and follow simple directives of 2-3 steps** as evidenced by her ability to independently manage her [activities of daily living], shopping, and maintenance of household chores.

\*\*\*

Anxiety symptoms would limit [claimant's] ability to sustain effort and concentration to persist to task completion. **[Claimant] retains the capacity for carrying out simple repetitive tasks in a setting without demands for fast pace or high production.**

\*\*\*

Claimant is sensitive, suspicious and uncomfortable socially, but condition is currently stable with no episodes of acute depression or manic symptoms and **can relate adequately with others in a low demand setting for activities that do not require regular contact with the general public or direct collaborative efforts with others for task completion.**

\*\*\*

Claimant is able to adapt to minor and infrequent changes in the work setting. She travels in her community, can recognize hazardous conditions in the workplace and make independent plans. **She'll perform optimally with routine job duties that remain static and are performed in a structured, stable, predictable work setting that doesn't undergo frequent changes, any necessary changes need to occur infrequently and be adequately and easily explained to her ahead of time.**

[Claimant] does have a substance abuse diagnosis and her capacity may be impacted when under the influence of a substance.

(*Id*.)(emphasis added)

On April 26, 2015, state agency physician Vicki Warren, Ph.D., reviewed Derouchie's medical records and completed a PRT and Mental RFC Assessment. (Tr. 101-102, 103-105.) She affirmed Dr. Warren's assessment. (*Id*.)

### 2.     Physical Impairments

On October 31, 2014, state agency physician Leigh Thomas, M.D., reviewed Derouchie's

medical records and concluded Derouchie had no severe physical impairment.  (Tr. 83-84.)

On April 25, 2015, state agency physician Leslie Green, M.D., reviewed Derouchie's

medical records and affirmed Dr. Thomas' conclusion.  (Tr. 100-101.)

### D.     Hearing Testimony

During the May 27, 2016 hearing, Derouchie testified to the following:

- She lives in an apartment with one other individual.  (Tr. 37.)  She reached the seventh grade in school.  (Tr. 38.)  She has difficulty reading and describes herself as "very, very illiterate."  (Tr. 39.)  She is able to add, but has trouble managing money.  (Tr. 40.)

- She has been to prison on seven separate occasions.  (Tr. 43.)  She worked several jobs in prison, including wiping tables and doing laundry.  (Tr. 39.)  She has never had a drivers' license and uses the bus for transportation.  (Tr. 41.)

- She is paranoid schizophrenic and avoids others.  (Tr. 44.)  She experienced trauma as a child and has been receiving mental health treatment since age six.  (Tr. 46.)  She rarely leaves her home.  (Tr. 55.)  When she was incarcerated, she was in maximum security and had little interaction with others.  (*Id*.)

- She has back problems and cannot stand for long periods.  (Tr. 47.)  She takes Naprosyn for her pain.  (Tr. 48.)  She had surgery on both feet and her left ankle.  (Tr. 49.)  She is supposed to wear a medical shoe on her left foot.  (*Id*.)

- She has bronchitis and COPD.  (Tr. 53.)  She has trouble breathing when it is hot.  (*Id*.)  She uses a machine to sleep at night.  (*Id*.)

- She is addicted to alcohol, but has been sober since July 2015.  (Tr. 57.)  She also used crack cocaine in the past, but has not done so since July 2015.  (Tr. 58.)

The VE testified Derouchie had no past relevant work.  (Tr. 66.)  The ALJ then posed the

following hypothetical question:

> For the first hypothetical, I'm going to ask, Mr. Warner, if you can please assume an individual of claimant's age, education and work experience, and if you can also assume that this individual is limited to perform simple, routine and repetitive tasks, but not at a production rate pace. Have occasional interactions with supervisors, coworkers, and the public. Is limited to occasional routine work place changes that can be easily explained to this individual ahead of time.

(Tr. 66.)

The VE testified the hypothetical individual would be able to perform several representative jobs in the economy, such as hand packager (D.O.T. #920.587-018); machine packager (D.O.T. #920.685-078); and kitchen helper (D.O.T. #318.687-010). (Tr. 67.)

Later in the hearing, Derouchie's attorney and the VE engaged in the following exchange:

> Attorney: And if we were to assume a hypothetical individual who had anxiety symptoms such that they would limit the individual's ability to sustain effort and concentration to persist to task completion, they wouldn't be able to perform any unskilled work, isn't that correct?
>
> VE: Okay. Anxiety – again, could you please repeat the specific restriction?
> Attorney: Sure. This hypothetical individual –
>
> VE: Right.
>
> Attorney: – has anxiety symptoms such that they would limit that individual's ability to sustain their effort and concentration to persist to task completion, they wouldn't be able to perform any unskilled work, particularly with regards to persisting to task completion, isn't that correct?
>
> VE: Well, how would it limit – to what degree would it limit their ability to do that?
>
> Attorney: Well, maybe I'll address it another way and take a step back. How important is it for somebody to be able to complete tasks?
>
> VE: They have to do it consistently.

Attorney: And so if they were unable to consistently sustain their effort and concentration to persist to task completion, they wouldn't be able to perform any tasks. They wouldn't be able to maintain employment, is that correct?

VE: Correct. And they wouldn't be able to do these entry level, unskilled jobs.

(Tr. 69-70.)

## III. STANDARD FOR DISABILITY

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of

age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since May 29, 2014, the application date (20 CFR 416.971 *et seq*.).

2.    The claimant has the following severe impairments: anxiety disorders, affective disorders, and alcohol and substance addiction disorders (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace; she can have occasional interactions with supervisors, coworkers, and the public; and is limited to occasional, routine workplace changes that can be easily explained to her ahead of time.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on August 11, 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since May 29, 2014, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-23.)

# V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner

13

are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely

overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.    Analysis

In her sole assignment of error, Derouchie argues the ALJ failed to "properly evaluate the opinions of the State agency psychological consultants and further erred by failing to account for all of Plaintiff's work-related limitations in her RFC finding."  (Doc. No. 14 at 7.)  Derouchie contends while the ALJ assigned the state agency psychological consultants' opinions "great weight," she did not explain "why she did not adopt their opinion that Plaintiff was limited in her ability to sustain effort and concentration to persist to task completion."  (*Id*. at 8.)  She asserts this error was not harmless, as the vocational expert's testimony established the "limited ability to sustain effort and concentration to persist to task completion . . . would preclude the ability to perform even unskilled work."  (*Id.* at 8, 9.)

The Commissioner maintains the ALJ properly considered the state agency physicians' opinions and "accounted for the resulting limitations in the RFC finding."  (Doc. No. 15 at 7.) The Commissioner contends the state agency consultants found Derouchie "retained the capacity to carryout simple, routine, and repetitive tasks, but not at a production rate pace," which the ALJ accounted for in the RFC.  (*Id*. at 9.)  The Commissioner further argues "while the vocational expert stated that a person who could not consistently complete tasks would not be able to maintain employment, neither the state agency psychological consultants nor the ALJ found that Plaintiff could not consistently complete tasks."  (*Id*. at 9.)

The RFC determination sets out an individual's work-related abilities despite their

limitations.  *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an

administrative determination reserved to the Commissioner.  *See* 20 C.F.R.§ 416.927(d)(2).  An

ALJ "will not give any special significance to the source of an opinion on issues reserved to the

Commissioner."  *See* 20 C.F.R.§ 416.927(d)(3).[4]  As such, the ALJ bears the responsibility for

assessing a claimant's RFC, based on all of the relevant evidence.  *See* 20 C.F.R. § 416.946(c).

"Judicial review of the Commissioner's final administrative decision does not encompass

re-weighing the evidence."  *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105 at * 7 (W.D.

Mich. Mar. 26, 2012) (citing *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir.

1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. 2011); *Vance v.

Comm'r of Soc. Sec.*, 260 Fed. App'x 801, 807 (6th Cir. 2008)).

  With respect to agency reviewing physicians' opinion, an ALJ must weigh their opinions

under the same factors[5] as treating physicians, including the supportability and consistency of the

opinions, as well as the specialization of the physician.  *See* 20 C.F.R. § 416.927.  However,

ALJs "are not bound by any findings made by State agency medical or psychological

consultants, or other program physicians or psychologists."  20 C.F.R. § 404.1527(e)(2) (I).

Nonetheless, because "State agency medical and psychological consultants and other program

---

[4] Revised versions of these regulations took effect on March 27, 2017 and apply to
disability claims filed on or after that date.  *See* 82 Fed. Reg. 5844 (March 27,
2017).

[5] These factors include the relationship and frequency of examination, the nature
and extent of the treatment relationship, how well-supported the opinion is by
medical signs and laboratory findings, its consistency with the record as a whole,
the treating source's specialization, the source's familiarity with the Social
Security program and understanding of its evidentiary requirements, and the
extent to which the source is familiar with other information in the case record
relevant to the decision.  20 CFR §416.1527(c)(1)-(6).

physicians, psychologists, and other medical specialists are highly qualified physicians,

psychologists," ALJs must consider their findings and opinions. *Id.*

At step four, the ALJ made the following RFC determination:

[S]he is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace; she can have occasional interactions with supervisors, coworkers, and the public; and is limited to occasional, routine workplace changes that can be easily explained to her ahead of time.

(Tr. 19.)   In her discussion at step four, the ALJ assigned "great weight" to the state agency

psychologists, reasoning as follows:

The opinions of State agency psychological consultants, Karen Terry, PhD and Vicki Warren, PhD (Ex. 1A, 3A), are given great weight because they are consistent with the evidence as a whole, which reflects long periods with few if any reported symptoms while the claimant was compliant with treatment and no abnormal mental status examination findings, as detailed above.

(Tr. 21-22.)

Derouchie contends the ALJ's RFC determination is inconsistent with the findings made

by the state agency physicians because it failed to include[6] the restriction she "was limited in her

ability to sustain effort and concentration to persist to task completion."  (Doc. No. 14 at 8.)  A

review of the record indicates Derouchie is referring to state agency psychologist Karen Terry,

---

[6]     The Commissioner asserts Derouchie is also arguing the ALJ failed to account for Dr. Terry's finding Derouchie was moderately limited in her ability to maintain attention and concentration for extended periods.  (Doc. No. 15 at 7.)  The Commissioner is correct this finding does not constitute an RFC assessment. *See King v. Comm'r of Soc. Sec.*, 2018 WL 4214388, *7 (S.D. Ohio Sept. 5, 2018); *Clark v. Berryhill*, 2017 WL 6987959, *14-15 (N.D. Ohio Dec. 22, 2017), *report and recommendation adopted by* 2018 WL 454393 (N.D. Ohio Jan. 16, 2017). However, a review of Derouchie's brief indicates her arguments are not regarding this limitation, but rather, the finding she was limited in her ability to sustain effort and concentration to persist to task completion.  (Doc. No. 14 at 8.)  Thus, the Court will not address this additional limitation any further.

Ph.D.'s November 6, 2014 assessment.  Within this assessment, Dr. Terry provided the

following conclusion:

> Anxiety symptoms would limit [claimant's] ability to sustain effort and
> concentration to persist to task completion.  [Claimant] retains the capacity
> for carrying out simple repetitive tasks in a setting without demands for fast
> pace or high production.

(Tr. 87.)  State agency psychologist Vicki Warren, Ph.D., affirmed this conclusion.  (Tr. 104.)

Within the RFC, the ALJ limited Derouchie to "simple, routine, and repetitive tasks, but

not at a production rate pace."  (Tr. 19.)  This RFC essentially adopts the findings made by Dr.

Terry and affirmed by Dr. Warren. Accordingly, the Court finds the ALJ appropriately assigned

this opinion "great weight."  (Tr. 21-22.)

Derouchie argues this limitation did not fully incorporate the findings made by Dr. Terry.

(Doc. No. 14 at 8.)  However, Dr. Terry's observation Derouchie would have limits in her

"ability to sustain effort and concentration to persist" at tasks is not a specific restriction[7] which

---

[7]   The VE's testimony illustrates this.  Indeed, at the administrative hearing,
Derouchie's counsel provided Dr. Terry's exact language when questioning the
VE:

Attorney: And if we were to assume a hypothetical individual who
had anxiety symptoms such that they would **limit the individual's
ability to sustain effort and concentration to persist to task
completion**, they wouldn't be able to perform any unskilled work,
isn't that correct?

VE: Okay.  Anxiety – again, could you please repeat the specific
restriction?

Attorney: Sure.  This hypothetical individual –

VE: Right.

Attorney: – has anxiety symptoms such that they would **limit that**

18

the ALJ could have placed in the RFC.  Rather, Dr. Terry was acknowledging Derouchie's

capacity to sustain effort and concentration to persist at tasks was impaired.  She then indicated

the degree and the extent of the impairment by restricting Derouchie to simple, repetitive tasks

without demands for fast pace or high production.  (Tr. 87.)  The ALJ accordingly placed this

specific limit in the RFC.

Derouchie also contends because the ALJ assigned Dr. Terry's opinion "great weight,"

the ALJ was compelled to include all the limitations in Dr. Terry's Mental RFC Assessment, or

explain any deviation therein.  (*See* Doc. No. 14 at 8.)  The Court rejects this argument.  When

an ALJ accords "great weight" to a medical opinion, the ALJ is not required to adopt every facet

of the opinion expressed by the medical source.  *See Taylor v. Colvin*, 2013 WL 6162527 at *15

(N.D.Ohio Nov.22, 2013) (finding ALJ was not required to adopt every opinion of an ME "by

virtue of the fact that, overall, he gave [the ME's] opinion great weight").  *See also White v.

Comm'r of Soc. Sec.*, 2013 WL 4817673 at * 16 (N.D.Ohio 2013) (noting that "[t]he fact that the

ALJ did not incorporate all of Dr. Castor's restrictions, despite attributing significant weight to

his opinion, is not legal error in and of itself"); *Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133

at * 11 (N.D. Ohio Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to

explain each limitation or restriction he adopts or, conversely, does not adopt from a

---

       **individual's ability to sustain their effort and concentration to
persist to task completion**, they wouldn't be able to perform any
unskilled work, particularly with regards to persisting to task
completion, isn't that correct?

       VE: Well, **how would it limit – to what degree would it limit
their ability to do that**?

       (Tr. 69-70.)(emphasis added)

non-examining physician's opinion, even when it is given great weight"). Thus, although the ALJ assigned "great weight" to Dr. Terry's opinion, she was not required to adopt the limitations verbatim or explain any deviation from the opinion.

In addition, Derouchie asserts the VE's testimony establishes the "limited ability to sustain effort and concentration to persist to task completion . . . would preclude the ability to perform even unskilled work." (Doc. No. 14. at 8, 9.) However, this is a misrepresentation of the VE's testimony. At the administrative hearing, Derouchie's attorney asked the VE if an individual who was "unable to consistently sustain their effort and concentration to persist to task completion" would be able to maintain employment. (Tr. 70.) The VE responded such an individual would not be able to maintain employment or perform "entry level, unskilled jobs." (*Id.*) This testimony differs from the findings of Dr. Terry, who simply observed Derouchie was *limited* in her ability to consistently sustain effort and concentration to persist at tasks, not *completely precluded* from doing so. (Tr. 87.) Thus, Derouchie has not established the inclusion of Dr. Terry's notation would result in a finding of disability. Indeed, as discussed *supra*, when Derouchie's attorney did provide Dr. Terry's exact wording to the VE, the vocational expert was unable to provide an exact answer and requested a specific limit. (Tr. 69-70.)

Derouchie also points to another excerpt of the VE testimony, which established an individual who was off task for 30% of the workday would be precluded from employment. (Doc. No. 14 at 9, Tr. 72, 73.) Within the RFC, the ALJ accounted for several mental limitations, but did not include a percentage of off-task behavior. (Tr. 19.) Thus, Derouchie's argument surrounding this additional VE testimony is irrelevant. *See Salyer v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 596 (6th Cir. 2014). ("Regarding the first contention, though the VE

testified that Salyer's job prospects would diminish if certain hypothetical conditions applied, that testimony lacks relevance because in fact the ALJ found that none of those conditions applied.). *See also Watson v. Comm'r of Soc. Sec.,* 2018 WL 6386361, *9-10 (N.D. Ohio Dec. 6, 2018).

Moreover, the ALJ's RFC is supported by substantial evidence. Derouchie regularly received medications and counseling through Recovery Resources. (Tr. 1584, 1875, 1958, 1952.) The treatment notes indicate Derouchie tended to socially isolate herself, but her memory, judgment, and insight were often intact. (Tr. 1584, 1585, 1888, 1876, 1957, 1991.) She presented to appointments as attentive and focused. (Tr. 1585, 1876, 1991.) However, Derouchie did experience paranoia, flashbacks, and nightmares to past abuse. (Tr. 1952, 1584, 1875.) The RFC accounted for Derouchie's limitations in concentration, persistence, or pace by limiting her to "performing simple, routine, and repetitive tasks, but not at a production rate pace." (Tr. 19.) Derouchie points to no medical evidence which would indicate greater limitations than assessed by the ALJ. (*See* Doc. No. 14 at 8, 9.)

In sum, the ALJ's RFC is consistent with Dr. Terry's opinion, to which the ALJ appropriately gave great weight. The ALJ's RFC is also consistent with the substantial weight of the evidence, which confirms PTSD symptoms, but intact memory, judgment, insight, and normal attention and concentration. As the RFC is both consistent with the opinion of a state agency physician and the medical evidence, it properly accounts for Derouchie's mental health limitations.

Accordingly, the Court finds the ALJ properly considered the opinions of the state agency psychologists and the resulting RFC is supported by substantial evidence. Derouchie's assignment of error is without merit.

## VII.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

  *s/Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date: December 19, 2018